UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ERIC LUNA,

    Plaintiff,

    v.

CLEARLAKE OAKS COUNTY WATER DISTRICT, et al.,

    Defendants.

Case No. 18-cv-01620-PJH

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 15

Defendants Clearlake Oaks County Water District (the "District"), Alan Gardner, and Jason Mitchell's motion to dismiss came on for hearing before this court on July 11, 2018. Plaintiff Eric Luna appeared through his counsel, Eric Lambdin. Defendants did not appear through counsel or otherwise. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' motion, for the following reasons.

## BACKGROUND

The District employed Luna as an "Operator II" from June 2013 to October 27, 2016. Compl. ¶ 12. In that position, plaintiff repaired sewer and water conduits, and other water delivery machinery. Id. ¶ 13.

The complaint alleges that "[i]n February 2016[,] a blockage of a sewage line caused raw sewage to escape from a manhole resulting in sewage reaching the waters of Clear Lake (the 'Spill')." Id. ¶ 16. The sewage allegedly contaminated the water that remained on the street and was a public health risk. Id. ¶ 17.

The District is required to report to the California State Water Resources Control

1    Board (the "Control Board") all sewage spills known or suspected to have reached the
2    waters of Clear Lake. Compl. ¶ 18. The District's report about the Spill, dated October
3    27, 2016, contradicts the complaint's allegations about the Spill. See Dkt. 1-1, Ex. 1 (the
4    "Report"). According to the Report, the Spill occurred on October 14, 2016, not in
5    February 2016 as the complaint alleges.[1] Ex. 1 at 2. The Report also attaches a number
6    of affidavits, including affidavits from Mitchell and Gardner, that contradict Luna's
7    allegations about the Spill's severity. Compare Ex. 1 at 4-6, 12-14 to Compl. ¶¶ 21-24.

8    Because plaintiff believed that the District had submitted false information to the
9    Control Board regarding the severity of the Spill, "[p]laintiff stated his concerns to the
10   District's Board of Directors through Director Kuehn." Compl. ¶ 20. Plaintiff alleges that
11   Kuehn investigated the Spill due to discrepancies between the Report and other reports
12   he had received about the Spill. Id. ¶ 21. Kuehn concluded that the Report
13   "underreported the amount of effluent released from the sewage system and the amount
14   of effluent that reached a storm drain." Id. ¶ 22. While the District reported that less than
15   10 gallons of effluent had reached the waters of Clear Lake, reports from plaintiff and
16   others indicated a spill of several thousands of gallons. Id.

17   Pointing to a July 1, 2016 disciplinary letter, see Dkt. 1-2, Ex. 2, the complaint
18   alleges that after Mitchell learned that plaintiff provided opinions that contradicted
19   Mitchell's affidavit, Mitchell initiated a course of conduct that was retaliatory and led to
20   plaintiff's termination. Compl. ¶ 26. That, of course, makes little sense considering the
21   Spill did not occur until months later. In any event, plaintiff alleges that in conjunction
22   with his receipt of that letter, Mitchell and Gardner "threatened that [plaintiff] would be
23   fired if he continued voicing his opinions to board members." Id.; Ex. 2 at 1-2. In
24   addition, the letter prohibited plaintiff from any further discussion with District employees
25   about wages and compensation. Compl. ¶¶ 28-29, 32; Ex. 2 ¶ 1-2.

---

[1] Plaintiff's counsel admitted at the hearing that the complaint's reference to February 2016 was a typographical error.

2

On October 27, 2016, the District terminated plaintiff's employment. See Dkt. 1-3, Ex. 3 (termination letter). Though the letter states other reasons for the termination, plaintiff alleges he was terminated in retaliation for his whistleblower activities. Compl. ¶¶ 32-33.

Based on the above conduct plaintiff alleges six causes of action: (1) Infringement of Freedom of Speech in Violation of 42 U.S.C. § 1983 against all defendants; (2) Retaliation pursuant to Cal. Lab. Code § 1102.5 against the District; (3) Unlawful Prohibition on Discussing Wages in Violation of Cal. Lab. Code § 232 against the District; (4) Wrongful Termination in Violation of Public Policy against the District; (5) Intentional Infliction of Emotional Distress against all defendants; and (6) Negligent Infliction of Emotional Distress against all defendants. Defendants have moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## DISCUSSION

### A. Legal Standard

#### 1. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court must accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007).

3

1      "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " Id. at 679. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document. See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007). That is, the court may consider matters that are properly the subject of judicial notice, Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of L.A., 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider exhibits attached to the complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced extensively in the complaint and documents that form the basis of the plaintiff's claims. See No. 84 Emp'r-Teamster Jt. Counsel Pension Trust Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

**2.      Rule 12(b)(1)**

Federal courts can adjudicate only those cases which the Constitution and Congress authorize them to adjudicate—those involving diversity of citizenship or a federal question, or those to which the United States is a party. Mims v. Arrow Financial Services, LLC, 565 U.S. 368, 376-77 (2012). A defendant may raise the defense of lack of subject-matter jurisdiction by motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The party asserting jurisdiction bears the burden of establishing subject-matter jurisdiction. Kokkonen v. Guardian Life Ins., 511 U.S. 375, 377 (1994). Where the attack is facial, as is the case here, the court determines whether the allegations

4

contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004); Warth v. Seldin, 422 U.S. 490, 501 (1975).

**B.   Analysis**

**1.   Whether the Court Lacks Subject-Matter Jurisdiction**

Defendants first argue that the court lacks subject-matter jurisdiction because the federal § 1983 claim should be dismissed under the Substantiality Doctrine. That doctrine does not apply here. See Hagans v. Levine, 415 U.S. 528, 536-37 (1974). Plaintiff's § 1983 claim is not an "essentially fictitious" claim or one that alleges "bizarre conspiracy theories, [ ] fantastic government manipulations of [plaintiff's] will or mind, [or] any sort of supernatural intervention." Best v. Kelly, 39 F.3d 328, 330 (D.C. Cir. 1994). And defendants have not shown that plaintiff's "claim [is] . . . foreclosed by prior decisions of this Court or otherwise completely devoid of merit." Cook v. Peter Kiewit Sons Co., 775 F.2d 1030, 1035 (9th Cir. 1985).

**2.   Whether The Complaint States A § 1983 First Amendment Retaliation Claim**

The Ninth Circuit has set forth a five-step inquiry for § 1983 First Amendment retaliation claims:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

Dahlia v. Rodriguez, 735 F.3d 1060, 1067 (9th Cir. 2013) (en banc). The plaintiff bears the burden on the first three steps, and if he is able to meet that burden, the burden shifts to the public entity for the last two steps. Eng v. Cooley, 552 F.3d 1062, 1070-72 (9th Cir. 2009).

### a. Plaintiff's Speech On The Spill

Plaintiff first alleges that the defendants violated his First Amendment rights by terminating his employment in retaliation for his report to Kuehn about the Spill. The parties agree that of the five Dahlia steps, only the second is at issue: whether plaintiff spoke as a private citizen or public employee.

"[T]he plaintiff bears the burden of showing the speech was spoken in the capacity of a private citizen and not a public employee." Eng, 552 F.3d at 1071. "Statements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the product of 'performing the tasks the employee was paid to perform." Id. The Ninth Circuit has "articulated three guiding principles for evaluating whether an individual speaks as a private citizen or as a public employee[:] . . . whether the employee confined her communications to the chain of command; whether the employee spoke about routine issues or raised broad concerns about, for example, systemic abuse or corruption; and whether the employee spoke in direct contravention to a supervisor's orders." Heath v. City of Desert Hot Springs, 618 F. App'x 882, 884-85 (9th Cir. 2015) (citing Dahlia, 735 F.3d at 1074-75).

These principles support the conclusion that plaintiff spoke as a public employee. As currently pled, the complaint alleges that plaintiff, a District employee responsible for repairing sewer-related apparatus, believed the District had underreported the severity of a single sewage spill. Compl. ¶¶ 12 20. Based on that belief, plaintiff "stated his concerns to the Board of Directors through Director Richard Kuehn," a District employee. Id. Allegedly in retaliation for that report to Kuehn, the District disciplined plaintiff and subsequently terminated his employment. See Compl. ¶¶ 24-27, 33; Ex. 2; Ex. 3. Those allegations do not demonstrate that plaintiff spoke as a private citizen. Instead, they show that plaintiff's speech to a district employee was the product of performing tasks plaintiff was paid to perform.

The complaint does not support plaintiff's arguments to the contrary. See, e.g., Alpha III, Inc. v. City of San Diego, 187 F. App'x 709, 710 (9th Cir. 2006) ("We limit our

review to the operative complaint, documents to which the complaint refers, and judicially noticeable facts."); see also generally United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).[2]  First, the complaint says nothing about Kuehn's status as an elected official. Second, though plaintiff argues that the July 1, 2016 disciplinary letter shows plaintiff's report to Kuehn was outside of the chain of command, the complaint primarily describes the letter as a response to plaintiff's contradictory report about the Spill—an allegation that, as discussed above, makes no sense.  See Compl. ¶¶ 24-27.  Third, plaintiff argues that he was not paid to report fraud and underreporting of spills by his supervisors.  While that may be true, the complaint does not allege he reported to Kuehn about, for example, his supervisors' "corruption," other "systemic abuse," or "fraud."  Instead, the complaint alleges that plaintiff reported to Kuehn about the routine matter of a sewage spill.

### b.   Plaintiff's Speech on Wages and Compensation

Though not clearly alleged in the complaint, compare Compl. ¶ 32 to ¶¶ 34-37, plaintiff argues that defendants also violated his First Amendment right by prohibiting him from discussing wages with his co-workers.  That claim fails because the speech is not about a "matter of public concern."  Dahlia, 735 F.3d at 1067.

### 3.   Whether Plaintiff Failed To Exhaust His Administrative Remedies

"The [California] Tort Claims Act [the 'CTCA'] requires that any civil complaint for money or damages first be presented and rejected by the pertinent public entity."  Ard v. County of Contra Costa, 93 Cal. App. 4th 339, 343 (2001) (citing Cal. Gov. Code §§ 910, 912.4, 912.8, 945.4).  "Under Government Code section 945.4, presentation of a timely claim is a condition precedent to the commencement of suit against the public entity."  Id. "Where compliance with the Tort Claims Act is required, the plaintiff must allege compliance or circumstances excusing compliance, or the complaint is subject to general demurrer."  Mangold v. Cal. Public Utilities Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).

---

[2] In light of the complaint's deficiencies, the court need not decide the propriety of considering the two exhibits attached to plaintiff's opposition.

7

Plaintiff admits that the complaint fails to comply with the CTCA. Plaintiff instead argues that the CTCA's requirements do not apply to his supplemental state law claims because the complaint alleges a federal cause of action predicated on a "fundamental right"—i.e., the § 1983 First Amendment retaliation claim. The cases plaintiff points to do not come close to supporting plaintiff's argument that the § 1983 claim exempts plaintiff's state law claims from state law exhaustion requirements. See, e.g., Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496, 516 (1982) ("conclud[ing] that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."); Lawson v. Tehama Cty., No. 217CV01276TLNGGH, 2017 WL 5177835, at *8 (E.D. Cal. Nov. 8, 2017) (same); R.R. St. & Co. Inc. v. Transp. Ins. Co., 656 F.3d 966 (9th Cir. 2011) (not addressing state law exhaustion requirements, the CTCA, or § 1983).

Accordingly, the court DISMISSES plaintiff's second through sixth causes of action for failure to comply with the CTCA's presentation and exhaustion requirements. The dismissal is with leave to amend because during the hearing plaintiff's counsel asserted that plaintiff had in fact complied with the CTCA. Any amended complaint shall allege facts and attach documents demonstrating that fact.

**CONCLUSION**

In accordance with the foregoing, defendants' motion to dismiss is GRANTED. As this is the first time the court has dismissed plaintiff's complaint, the dismissal is WITH LEAVE TO AMEND. However, the amended complaint's § 1983 First Amendment retaliation claim may not be predicated on plaintiff's speech about wages as no amendment can save that claim. Any amended complaint shall be filed no later than August 8, 2018. No additional claims or parties may be added without defendants' consent or leave of court.

///

///

///

**IT IS SO ORDERED.**

Dated: July 13, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge